**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DARREN PREACELY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-0492 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

In this employment discrimination suit, Defendant City of Houston ("City") has filed a Motion for Summary Judgment [Doc. # 19] ("Motion"). Plaintiff Darren Preacely, proceeding *pro se*, has filed a response.[1] The City has replied,[2] and both parties have filed further briefing.[3] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that

---

[1]   Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 20] ("Response").

[2]   City's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 22].

[3]   Plaintiff's Response Two to Defendant's Motion for Summary Judgment [Doc. # 23]; Defendant's Reply to Plaintiff's Response Two to Defendant's Motion for Summary Judgment [Doc. # 24]. The Court also has reviewed and considered Plaintiff's Response Three to Defendant's Motion for Summary Judgment [Doc. # 25], filed on May 6, 2011.

Defendant's Motion should be **granted**.

## I.     BACKGROUND

Plaintiff Darren Preacely alleges that he was subject to race discrimination and harassment based on his race, and that he was laid off in retaliation for his complaints about the discrimination.

Preacely previously was employed by the City of Houston, Housing and Community Development Department ("HCD").  Although Defendant has presented several pieces of documentary evidence that Preacely was employed as an Administration Manager at Pay Grade 26 from 2005-2007,[4] Preacely contests these facts, arguing that he in fact was Pay Grade 24 or 25.[5]

Preacely, along with ten others, was laid off from HCD effective June 1, 2007.

Plaintiff alleges that, during his employment with HCD, he was subject to racial harassment by Donald Sampley, an Assistant Director at HCD.  On April 23, 2007, Plaintiff made a complaint with the Office of the Inspector General ("OIG") regarding

---

[4]     City of Houston Civil Service Commission forms regarding Preacely (Exhibit 6 to Motion) (forms show Preacely as Administration Manager, Pay Grade 26 at time of layoff in 2007; Administration Manager, Pay Grade 26 upon hire in April 2005).  *See* City of Houston Personnel Requisition Form regarding Preacely, dated April 5, 2005 (Exhibit 17 to Motion) (Preacely hired as Administration Manager, Pay Grade 26).

[5]     *See*, *e.g.*, Response [Doc. # 20], at 5-10.

Sampley's alleged harassment.[6]

> [Preacely] alleges that [Sampley] has caused a 'racially charged
> environment.' [Preacely] stated that [Sampley] has a problem with the
> reports that [Preacely] turns in, but that [Sampley] does not directly
> communicate this with [Preacely], but instead has the secretary convey
> this to [Preacely].[7]

Preacely alleges in several places that he first complained to OIG by phone around

April 4, 2007.[8]  The OIG then opened an investigation, as is detailed below.

On May 3, 2007, Preacely was informed that he was being laid off.[9]  The letter

giving him formal notice of the layoff read as follows:

> [HCD] has submitted and had approved a reduction in force (layoff) to
> resize the organization to fit its current mission.  The classifications
> affected are managerial and as such, your classification is one of those
> that have been targeted for reduction.  This memorandum serves as your
> formal and official notice that your current position is being eliminated
> by virtue of a layoff and that your last day of employment with the City

---

[6]     City of Houston, Office of Inspector General, Record of Complaint, dated April 23,
2007 (Exhibit 11 to Motion).

[7]     *Id.*  Preacely filed an additional letter to OIG on April 30, 2007.  *See* Exhibit 19 to
Motion.

[8]     Preacely gives different dates for his alleged oral complaint.  *See*, *e.g.*, Deposition of
Darren Preacely (Exhibit 24 to Motion) ("Preacely Deposition"), at 31 (Preacely
testified that he contacted OIG "on or around April 4th, 2007"); Response Two [Doc.
# 23], at 9 (Preacely made an in-house complaint on April 4, 2007); *id.* at 10-11
(Preacely contacted OIG on or around Good Friday, which was April 6, 2007, and
was contacted by OIG on April 9, 2007).

[9]     Letter from R. Celli to D. Preacely, dated May 3, 2007 (Exhibit 9 to Motion).

of Houston will be at the close of business on June 1, 2007.[10]

Preacely appealed the layoff decision to the Municipal Employees' Civil Service Commission, which dismissed the appeal on the merits.[11]

Defendant has presented evidence that the layoff that included Preacely was set in motion before Preacely filed his complaint with the OIG.  In January, 2007, David Mincberg, on behalf of Mayor Bill White, convened a working group to address the Mayor's request that he review the organizational plan for HCD.[12]  On April 4, 2007, Richard S. Celli, then newly hired as Director of HCD, sent an email to all HCD staff announcing that he had "studied the current organization" and was "in the process of implementing some changes that I believe will improve the delivery of community development services to the citizens of Houston."[13]  The employees were informed that they would receive further information "very soon."[14]  On April 9, 2007, Celli sent a memorandum to Mayor White requesting permission to lay off "up to nine positions at the Level 26—Staff Analyst and Administration Manager levels," with

---

[10]     *Id.*

[11]     Order of the Commission, dated July 10, 2007 (Exhibit 10 to Motion).

[12]     Email from D. Mincberg dated January 31, 2007 (Exhibit 3 to Motion).

[13]     Memorandum from R. Celli dated April 4, 2007 (Exhibit 4 to Motion).

[14]     *Id.*

an implementation date of May 1, 2007.[15]  Mayor White approved the request.[16]
Eleven employees then were laid off from HCD, including Preacely.

Preacely argues that his inclusion in the layoff was improper because he in fact
was Pay Grade 24, not Pay Grade 26, and Celli's request for authorization pertained
only to Pay Grade 26.[17]  He further argues that the layoff was illegal because Mayor
White only approved nine positions for layoff, but ultimately eleven employees were
let go.

Liz Wilder, a City employee who assisted with the restructuring that led to the
layoff, testified at deposition that Celli decided to eliminate middle-management
employees in order to make the organization more efficient, and in particular decided
to "do a reduction in force . . . at the 26 level."[18]  Those at Pay Grade 26 were
primarily administration managers and staff analysts.  Ms. Wilder testified that the
City's original decision was to eliminate all employees at Pay Grade 26, but that the
City later individually exempted from layoff four employees "who had critical job

---

[15]     Memorandum from R. Celli to Mayor White, dated April 9, 2007 (Exhibit 5 to
Motion).

[16]     *Id*.

[17]     *Id*.

[18]     Deposition of Liz Wilder (Exhibit 15 to Motion), at 18-20.

skills that could not be eliminated without gravely injuring the department."[19]  She stated that the City's Human Resources Department provided her with a list of persons in Pay Grade 26, and that Preacely's name was on the list.[20]  Wilder testified that she received the list from Human Resources "[i]n the spring of 2007" and that, although she could not recall a specific date, it was "probably" in March.[21]  When asked, "Were there any other reasons why Mr. Preacely was laid off?," Wilder answered, "No."[22]

The layoff plan was subject to a review by the Affirmative Action & Contract

---

[19]    *Id*. at 21-22.  The four exempted employees were Vassie Cook, who had advanced skills in records management; Dena Gray, who had specialized knowledge of regulations regarding housing for persons with AIDS; Brenda Scott, who had specialized training from HUD for use of federal funds; and Patsy Strong-Miles, who had specialized knowledge of the accounting system.  *Id*. at 22-24.

[20]    *Id*. at 36.

[21]    *Id.* at 36-37.   Other evidence submitted by the City demonstrates that Preacely's name was on the layoff list by April 9, 2007, at the latest.  On April 9, Yvette Warren at HCD sent an email to Renee Carrington at HCD with the subject "Layoff Plan." Email from Y. Warren to R. Carrington, dated April 9, 2007 (Exhibit 23 to Motion). Warren's email gives information regarding the layoff process and concludes, "I have prepared the attached file indicating the layoff order for both the Administration Manager and Staff Analyst classifications prior to the Director's exemptions." Subsequent pages of Exhibit 23 reproduce an Excel file headed "Managerial Layoff Tier, EEOC (A), April 9, 2007," which lists Preacely, along with eleven others, as Administration Managers at Pay Grade 26.  Another file entitled "Professional Layoff Tier, EEOC B, April 9, 2007" lists three Staff Analysts at Pay Grade 26.   In combination, the files list fifteen employees at Pay Grade 26 who were slated for layoff.   As discussed above, the City states that four employees were exempted because of specialized job skills.

[22]    *Id*. at 36.

Compliance Division, who concluded that there was "no indication that employees are being denied employment on the basis of ethnicity or gender."[23]  The review found that, of the eleven employees targeted for layoff, one was White, nine were Black, and one was Hispanic.  Of the four employees exempted from layoff due to specialized qualifications, all four were Black females.  Before the layoff, of the employees with the title Administrative Manager, one was White, ten were Black, and one was Hispanic; after layoff, the four remaining employees in the Administrative Manager classification were Black.[24]

On May 9, 2007, approximately one week after being informed of his layoff, Preacely signed an affidavit in connection with the OIG investigation which made the following allegations regarding Sampley: Sampley harassed Preacely and targeted him for verbal abuse; Sampley commented to employees in the Grants Management department that a project (not identified in the affidavit) was "a 'Sambo' project"; Sampley marginalized Preacely's contributions and attacked his productivity; and Sampley attempted to have Preacely discredit third party inspection reports for the purpose of reducing the overall cost of a project, which Preacely refused to do

---

[23]     Memorandum from V. Laws to C. Clarke Aldridge, dated May 2, 2007 (Exhibit 8 to Motion).

[24]     *Id*.

"because it would be unethical."[25]  Preacely also recounted in the affidavit that he once received a phone call from Sampley's secretary, and that he could hear Sampley in the background relaying a message for Preacely.  Preacely stated that he could hear "[Sampley's] tone of voice and his seemingly out of control vocalization of his tirade," that such treatment of Preacely "reinforces [Sampley's] discriminatory attitude," and that other employees of HCD had witnessed such behavior from Sampley.  Preacely further stated, "I have not seen or heard Mr. Sampley act in such a manner towards whites, but I have heard the majority of blacks that work for him or that are in contact with him on a daily basis, make comments about his rage and racial comments."[26]

Defendant states that HCD first learned of Preacely's complaint to OIG on May 21, 2007.  On that date, the OIG sent a memorandum to Director Celli advising him that a complaint of racial discrimination had been received from Preacely against Sampley, and that the OIG was currently investigating the matter.[27]  On November 30, 2007, at the conclusion of the investigation, the OIG found that Sampley had

---

[25]    Sworn Affidavit of Darren Preacely, dated May 9, 2007 (Exhibit 20 to Motion), at 2.

[26]    *Id*.

[27]    Memorandum from J.G. Jones to R. Celli, dated May 21, 2007 (Exhibit 22 to Motion).

displayed a lack of respect for fellow employees, but found insufficient evidence to prove or disprove the allegations regarding Sampley's racial remarks.[28]

On September 11, 2007, Preacely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of race discrimination and retaliation.[29]  On November 20, 2009, he was notified of his right to file a civil action within ninety days.[30]  Plaintiff timely filed this suit on February 16, 2010.[31]

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the

---

[28]   Letter from Inspector General Lumpkin to Preacely, dated November 30, 2007 (embedded in Response, at 20) ("After careful review of the facts, we found insufficient evidence to prove or disprove your allegations regarding Donald H. Sampley making inappropriate racial remarks. Therefore the allegation of racial slurs was determined to be **NOT SUSTAINED**. The investigation found that Mr. Sampley displayed a lack of respect for fellow employees.  Therefore, the allegation was determined to be **SUSTAINED**.").   Although this document is embedded in Plaintiff's briefing and not submitted with Defendant's exhibits, Defendant does not object to the document and in fact argues that the document supports its case.

[29]   EEOC Charge of Discrimination (Exhibit 12 to Motion).

[30]   Notice of Right To Sue, dated November 20, 2009 (Exhibit 14 to Motion).

[31]   Complaint [Doc. # 1].

party's case, and on which that party will bear the burden at trial.[32]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[34]  The moving party, however, need not negate the elements of the non-movant's case.[35]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[36]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[37]  "An issue is material if its resolution could affect the outcome of the

---

[32]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[33]     FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[34]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[35]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[36]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[37]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[39]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[40]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[41]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[42]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[43]  In the absence of any proof,

---

[38]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[39]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[40]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[41]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[42]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[43]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. (continued...)

the court will not assume that the non-movant could or would prove the necessary facts.[44]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[45]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[46]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[47]

---

[43]   (...continued)
2003) (citation and internal quotation marks omitted).

[44]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[45]   *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[46]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[47]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

III.  **ANALYSIS**

Plaintiff brings claims under Title VII for race discrimination, retaliation, and hostile work environment.

A.  **Title VII Race Discrimination**

1.  **Legal Standards**

Plaintiff alleges discrimination on the basis of his race.  Under the burden-shifting standard applicable to Title VII claims, a plaintiff claiming race discrimination must establish a *prima facie* case.[48]  In the context of a reduction in force, a plaintiff must show (1) that he is within the protected group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of discharge; and (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.[49]

A plaintiff's *prima facie* case creates an inference of intentional discrimination that shifts the burden back to the defendant to articulate a legitimate,

---

[48]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009);  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[49]   *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  *See Ortiz v. The Shaw Group, Inc.*, 250 F. App'x 603, 606 (5th Cir. 2007); *Creaghe v. Albemarle Corp.*, 98 F. App'x 972, 975 (5th Cir. 2004).

nondiscriminatory reason for the adverse employment action.[50]   The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'"[51]

If the employer provides such a reason, the burden then shifts back to the plaintiff to offer evidence to demonstrate a genuine issue of material fact that "either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic was a 'motivating factor' in its decision."[52]   Under the "motivating factor" analysis, if the plaintiff demonstrates that the protected characteristic was a motivating factor in the employment decision, the employer must then prove "that the same adverse employment decision would have been made regardless of discriminatory animus."[53]

Despite this intermediate burden shifting, the plaintiff at all times bears the

---

[50]     *McDonnell Douglas*, 411 U.S. at 802;  *Lee*, 574 F.3d at 259.

[51]     *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

[52]     *Taylor v. Peerless Indus. Inc*., 322 F. App'x 355, 360 (5th Cir. 2009) (citing *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004)).

[53]     *Taylor*, 322 F. App'x at 361.

ultimate burden to demonstrate that the defendant intentionally discriminated.[54]

## 2.    Preacely's Evidence of Race Discrimination

The Court will assume, without deciding, that Preacely can establish a *prima facie* case of race discrimination.[55]   Defendant has articulated nondiscriminatory reason for Plaintiff's discharge, in particular, the reorganization (essentially, a reduction in force) of HCD that resulted in eleven layoffs.[56]

Because Defendant articulated a nondiscriminatory reason, the burden shifts back to Plaintiff to establish intentional discrimination on the basis of race.   Preacely alleges that the City's decision to include him in the reduction in force was motivated by racial discrimination.   In particular, he alleges as follows:

- Sampley caused a "racially charged environment" at HCD;[57]

---

[54]   *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n. 13 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[55]   The Court notes, however, that Plaintiff has not offered evidence going to the third prong of the *prima facie* case, *i.e.*, that at the time of his layoff he was qualified to assume another position with the City.  Moreover, as discussed above in connection with Plaintiff's showing on his ultimate burden, his evidence going to the fourth prong, *i.e.*, evidence of Defendant's intent to discriminate, is extremely weak.

[56]   *Baker v. American Airlines*, *Inc*., 430 F.3d 750, 754 (5th Cir. 2005) (American Airlines' "company-wide ten percent reduction in force" qualifies as a legitimate nondiscriminatory employment action "if true and not a pretext");  *EEOC v. Texas Instruments, Inc*., 100 F.3d 1173, 1181 (5th Cir. 1996) (reduction in force "is itself a legitimate, nondiscriminatory reason for discharge").

[57]   City of Houston, Office of Inspector General, Record of Complaint, dated April 23, 2007 (Exhibit 11 to Motion).  The allegation of a "racially charged environment" is
(continued...)

- Sampley commented to employees in the Grants Management department that a certain project, not specifically identified by Preacely, was "a 'Sambo' project";[58]

- Sampley's vocal "tirade," which Preacely heard through the phone, "reinforce[d] [Sampley's] discriminatory attitude";[59] and,

- Preacely's statement to OIG that, "I have not seen or heard Mr. Sampley act in such a manner towards whites, but I have heard the majority of blacks that work for him or that are in contact with him on a daily basis, make comments about his rage and racial comments."[60]

None of these allegations are supported by further detail or by further examples.

At his deposition, Preacely could not articulate any support for his belief that Sampley's actions were motivated by race discrimination.  When asked how he was treated differently from other employees, Preacely responded that he "was the only one who knew the inner workings of the inspection process," but that Sampley "didn't want to talk to [him] directly. . . . And I don't see why—I don't see why he's setting me aside when I was critical to the department—I mean, critical to that section."[61]

Q.   Why do you think that he did not want to meet with you?

---

57   (...continued)
     not supported by any specific events, conversations, or other facts.

58   Sworn Affidavit of Darren Preacely, dated May 9, 2007 (Exhibit 20 to Motion), at 2.

59   *Id.*

60   *Id.*

61   Deposition of Darren Preacely (Exhibit 24 to Motion), at 44.

| | |
|---|---|
| A. | I don't know. |
| Q. | Why do you think he set you aside, as you said? |
| A. | I don't know.  I can't—I don't know, honestly. |
| Q. | Well, do you have any reason to believe that it was because of your race? |
| A. | What other reason was there? |
| Q. | So do you have any reason to believe it was because of your race? |
| A. | Yes. |
| Q. | What reason is that? |
| A. | Because.  I don't understand—I didn't do sloppy work.  I did accurate work, I had the education, I had everything—I don't know why he treated me that way.  He didn't treat anyone else that way.[62] |

When asked if Sampley ever commented on his race, Preacely answered, "Never directly to me."[63]

Plaintiff has the ultimate burden to show either that racial discrimination was the City's true motive for his discharge (*i.e.*, that the reduction in force was a pretext for discrimination), or that racial discrimination was "a motivating factor" for his inclusion in the layoff.[64]  Plaintiff's evidence, summarized above, gives no specific

---

[62]   *Id*. at 44-45.

[63]   *Id*. at 45.  In addition, Preacely's briefing cites to "Attorney Lopez at Celli's testimony" and quotes "Lopez" as saying, "The Information that I have obtained so far, and I think it's from a reliable source, but I can't put it before you at this point, but it indicates that people are being replaced with White Anglo Saxon individuals; and I believe that, that is something that not only important [sic] to the minority communities, but it can be very embarrassing to the Mayor."  Response, at 18 (citing "Lopez 2007").  Plaintiff does not identify the purported speaker (Lopez), does not identify the source to whom Lopez allegedly referred, and does not explain what he means by "at Celli's testimony."  He offers no evidence to substantiate his hearsay allegation.  The Court assigns no weight to the purported statement.

[64]   *Taylor*, 322 F. App'x at 361 (citing *Rachid*, 376 F.3d at 312).

examples of incidents of race-based animus, except for an allegation that Sampley referred to one HCD project as a "Sambo" project.  There is absolutely no indication that this alleged comment, the date of which is not identified, played any role in the City's decision to include Preacely in the HCD layoffs.   Moreover, Defendant has presented evidence that the layoff decision was based on objective criteria.   In particular, all HCD employees at Pay Grade 26 were laid off, except for four Black employees who were exempted because of particular job skills.  Without any evidence that Sampley's alleged racial animus played any role in the layoff decision, Plaintiff's race-based claim must fail.[65]  Preacely's subjective belief that he was included in the layoff because of racial discrimination is insufficient to justify relief.[66]

Preacely also argues that he was improperly included in the layoff because Mayor White approved the layoff of "up to nine" positions at "Level 26"[67] but in fact

---

[65]    *See Roberson v. Alltel Information Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (plaintiff offered no evidence that the ultimate decisionmaker relied on impermissible criteria when creating the reduction in force list); *Rios v. Rossotti*, 252 F.3d 375, 379-80 (5th Cir. 2001) (plaintiff presented no evidence "that could lead a rational jury to find that the individuals who uttered [disparaging and racially insensitive] remarks possessed leverage, or exerted influence, over the [individuals with decision making authority]").

[66]    *Roberson*, 373 F.3d at 654; *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999).  *See Mire v. Texas Plumbing Supply Co., Inc.*, 286 F. App'x 138, 143-44 (5th Cir. 2008).

[67]    Memorandum from R. Celli to Mayor White, dated April 9, 2007 (Exhibit 5 to Motion).

the City laid off eleven employees, and because Preacely himself was Level 24, not Level 26. Preacely argues that the City failed to follow its own procedures, including internal procedures and City ordinances. However, even viewed in the light most favorable to Plaintiff, none of these arguments can justify Title VII relief in the absence of evidence of discriminatory motive:

> A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.[68]

Because, as stated above, Plaintiff has not produced any evidence that racial discrimination motivated his layoff, summary judgment is appropriate for Defendant on Plaintiff's discrimination claim.

### B. **Retaliation**

#### 1. **Legal Standards**

Title VII forbids an employer to retaliate against an employee who brings a charge of discrimination.[69] To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3)

---

[68]   *Turner v. Baylor Richardson Medical Center,* 476 F.3d 337, 346 (5th Cir. 2007) (internal quotation marks and citation omitted).

[69]   42 U.S.C. § 2000e-3.

a causal connection exists between the protected activity and the materially adverse action.[70]  If plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for its employment action.  Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the Defendant actually was motivated by retaliation.[71]

The Fifth Circuit ruled recently in *Smith v. Xerox* that a plaintiff relying on circumstantial evidence may prove Title VII retaliation under a "mixed motive" theory, as well as the "pretext" theory that previously was available.[72]  Under the pretext theory, Plaintiff may carry his ultimate burden by showing that Defendant's proffered reason is a pretext for retaliation—in other words, that retaliation was the "but for" cause for the adverse action.[73]  Under the mixed motive theory, if Plaintiff shows that illegal retaliation was one of several reasons for the adverse action, the Defendant may defend the action by establishing that "it would have made the same

---

[70]   *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

[71]   *Id*.

[72]   *Smith v. Xerox*, 602 F.3d 320 (5th Cir. 2010) ("motivating factor" standard); *Aryain*, 534 F.3d at 484 ("pretext" standard).

[73]   *Reine v. Honeywell Int'l, Inc*., 362 F. App'x 395, 398 (5th Cir. 2010) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir.2005)).

decision even without consideration of the prohibited factor."[74]

## 2.    Preacely's Evidence of Retaliation

As to a *prima facie* case of retaliation, Preacely participated in a protected activity when he complained about the alleged racial discrimination, and he suffered an adverse employment action when he was discharged.

The third prong of the *prima facie* case requires Preacely to show a "causal connection" between his complaint to OIG and his layoff.  Preacely relies on the timing of his complaint and his discharge on May 3, 2007.  Temporal proximity is a "significant, although not necessarily determinative, factor" in finding a causal connection.[75]  Preacely points out that the Mayor's approval of layoffs dated April 9, 2007, authorized only nine layoffs, but that by the time of the affirmative action review on May 2, 2007, eleven employees were being laid off.  He concludes that sometime between April 9 and May 2, "Defendant took it upon itself and found the means to operate outside the City Mayor's signature, caused-by, in retaliation against, Plaintiff (black male) for the filing of a discrimination and harassment complaint

---

[74]    *Smith*, 602 F.3d at 333.  Under the "motivating factor" test, assuming that Plaintiff could show that both legitimate and illegitimate reasons motivated the involuntary transfer, Defendant bears the burden to show, as an affirmative defense, that "its legitimate reason standing alone would have produced the same decision." *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000).

[75]    *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir.1995).

against [Sampley] (white male)."[76]

Plaintiff's arguments that the timing of events supports his retaliation claim are rebutted by Defendant, who has presented evidence that Preacely was identified for the reduction in force as early as March,[77] and no later than April 9, 2007,[78] weeks prior to his complaint to OIG on April 23, 2007.[79]  Even accepting as true Preacely's allegations that he actually made oral complaints to OIG earlier, around April 4th,[80] Preacely has presented no evidence that any person with influence over the layoff decisions knew of his complaint before deciding to include him in the layoff.[81]  Celli,

---

[76]  Response, at 13 (internal quotation marks, emphasis, and footnote omitted).

[77]  Wilder Deposition, at 36-37.

[78]  Email from Y. Warren to R. Carrington, dated April 9, 2007 (Exhibit 23 to Motion) (email attaches list of fifteen HCD employees slated for layoff, including Preacely, all of whom are Pay Grade 26).

[79]  City of Houston, Office of Inspector General, Record of Complaint, dated April 23, 2007 (Exhibit 11 to Motion).

[80]  *See*, *e.g.*, Preacely Deposition, at 31 (Preacely testified that he contacted OIG "on or around April 4th, 2007"); Response Two [Doc. # 23], at 9 (Preacely made an in-house complaint on April 4, 2007); *id*. at 10-11 (Preacely contacted OIG on or around Good Friday, which was April 6, 2007, and was contacted by OIG on April 9, 2007).

[81]  Preacely's latest filing asserts that HCD officials were aware of his complaint "that next week of April 9th (2007)" because Preacely "informed his Supervisor, Administration Manager, Patsy Strong-Miles, who in-turned [sic] informed Sampley and Sampley told the rest of the Housing Executives."  Response Three [Doc. # 25], at 7.  Plaintiff offers no competent summary judgment to support this allegation. Moreover, even assuming that all of Plaintiff's allegations are true, they fail to demonstrate that HCD officials included him in the layoff in retaliation for his oral complaints.  As stated in the text above, Defendant has presented evidence that
(continued...)

the director of HCD, was notified by OIG of Preacely's complaint against Sampley on May 21, 2007,[82] long after Preacely had been slated for the layoff, and several weeks after Preacely was officially notified that he was included.[83]  Preacely therefore has failed to produce evidence of a causal connection between his OIG complaint and his layoff.

Moreover, even assuming that Preacely could establish a *prima facie* case of retaliation, his retaliation claim would nevertheless fail.  As noted above, Defendant's showing regarding the reduction in force at HCD satisfies its burden to articulate a legitimate, nondiscriminatory employment action.[84]  The burden therefore shifts back to Preacely to prove that the City's layoff was actually motivated by retaliation against Preacely for his OIG complaint.   At this stage, the timing of Plaintiff's complaint and his layoff does not suffice, absent any evidence of retaliatory motive:

Close timing between an employee's protected activity and an adverse

---

[81]     (...continued)
Preacely was probably included on the layoff list in March, and at least by April 9th. Therefore, even if this Court were to accept as true Preacely's own assertion that word of his discrimination complaint spread within HCD the "week of April 9th," Defendant's evidence shows that Preacely had been slated for layoff, as a Pay Grade 26 employee, prior to that time.

[82]     Memorandum from J.G. Jones to R. Celli, dated May 21, 2007 (Exhibit 22 to Motion).

[83]     Letter from R. Celli to D. Preacely, dated May 3, 2007 (Exhibit 9 to Motion).

[84]     *Baker*, 430 F.3d at 754.

action against him may provide the "causal connection" required to make out a prima facie case of retaliation.  However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.[85]

The City's nondiscriminatory reason, *i.e.*, the reduction in force, explains both Preacely's termination and the timing of the termination.  Preacely has not offered evidence of retaliatory motive apart from the timing.[86]  In the absence of any competent summary judgment evidence that his discharge was motivated by retaliation for his OIG complaint, Plaintiff's retaliation claim fails.[87]

---

[85]   *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (internal citation and footnote omitted) (reduction in force case).  *See Roberson v. Alltell Information Services*, 373 F.3d 647, 656 (5th Cir. 2004) ("Roberson's argument is reduced to the following: the sole evidence of Alltel's retaliation is that the reduction-in-force occurred after his discrimination complaints. On the other hand we have Alltel's undisputed legitimate, nondiscriminatory reason for its employment action: a company-wide reduction-in-force. Without more than timing allegations, and based on Alltel's legitimate, nondiscriminatory reason in this case, summary judgment in favor of Alltel was proper").

[86]   As held above in connection with Preacely's race discrimination claims, his arguments that his layoff was unauthorized because he was not Pay Grade 26, or because only nine layoffs were authorized, also do not justify relief under Title VII. When considering a plaintiff's evidence of retaliation, the Court "is not to engage in second-guessing of an employer's business decisions." *LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007).  "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.* (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

[87]   *See Love v. Motiva Enterprises, LLC*, 349 F. App'x 900, 905 (5th Cir. 2009); *McCullough v. Houston County, Tex.*, 297 F. App'x 282, 288-89 (5th Cir. 2008); *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, *7 (5th Cir. June 6, 2008);
(continued...)

### C.   **Hostile Work Environment**

A Title VII hostile work environment claim requires that the plaintiff prove five elements:  (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action.[88]  Proof of the fifth element is not required when the purported harasser is a supervisor.[89]

In order to satisfy the fourth element's requirement that a "term, condition, or privilege" of employment was affected by the alleged harassment, a plaintiff must demonstrate that the harassment was sufficiently "severe or pervasive" to alter the conditions of employment and create an abusive working environment.[90]  In making the determination, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically

---

[87]   (...continued)
*Roberson*, 373 F.3d at 656.

[88]   *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir.2005) (citing *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir.2001)). *See Lyles v. Texas Alcohol Beverage Comm'n*, 379 F. App'x 380, 384 (5th Cir. 2010).

[89]   *Woods*, 274 F.3d at 299 n. 2 (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999)).

[90]   *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)); *Harvill*, 433 F.3d at 434 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.[91]   A workplace environment is hostile when it is "'permeated with discriminatory intimidation, ridicule, and insult.'"[92] Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not affect a "term, condition, or privilege" of employment.[93]  "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[94]

As held regarding Preacely's discrimination claim, Preacely presents virtually no evidence of race-based animus.   The only allegation with any particularity whatsoever is the allegation that, at an unspecified time, Sampley referred to an unidentified project as a "Sambo" project.  This allegation cannot suffice, under the Fifth Circuit precedent cited above, to show "severe or pervasive" harassment. Moreover, although Preacely argues that Defendant's motion should be denied because the City cannot disprove the alleged harassment, Preacely of course bears the

---

[91]     *Harvill*, 433 F.3d at 434 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[92]     *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Harris*, 510 U.S. at 21).

[93]     *Id.*  (internal citations and quotation marks omitted).

[94]     *Harvill*, 433 F.3d at 434 (internal citations and quotation marks omitted).

burden to establish the Title VII violation.[95]  Summary judgment on Plaintiff's hostile

environment claim is granted for Defendant.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 19] is

**GRANTED**.  All pending claims are **DISMISSED WITH PREJUDICE**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this <u>11</u><sup>th</sup> day of **May, 2011**.

Nancy F. Atlas
United States District Judge

---

[95]     *See*, *e.g.*, *Harvill*, 433 F.3d at 434.